*Exhibit A*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Appl. No. | : | 13/816,955 | Confirmation No. 2847 |
| Applicant | : | Marvin T. Ling | |
| Filed | : | February 14, 2013 | |
| Title | : | METHOD AND APPARATUS FOR CONDUCTING OFFLINE | |
| | | COMMERCE TRANSACTIONS | |
| TC/A.U. | : | 2887 | |
| Examiner | : | Vo, Tuyen Kim | |
| | | | |
| Docket No. | : | 2817-A-28 | |
| Customer No. : | | 33136 | |

**AMENDMENT**

Filed Via EFS
Commissioner for Patents
P. O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Office Action of October 17, 2014, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 4 of this paper.

Page 1 of 9

WV0168

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the

application:

**Listing of Claims:**

Claim 1 (amended):    A method for conducting offline electronic commerce

transactions <u>using a vendor barcode scanner at a vendor cash register</u> comprising:

(a)    providing a personal code to a person for their use to purchase goods;

(b)    converting said personal code into barcode format to form a User ID

Barcode;

<u>(c)    storing said personal code in a user vendor management server;</u>

(c) <u>(d)</u>  said User ID Barcode corresponding to said personal code and including at

least one special character to distinguish the barcode as a User ID Barcode <u>from a</u>

<u>product barcode;</u> and

(d) <u>(e)</u>  scanning <u>product barcodes and</u> said User ID Barcode to derive said

personal code to obtain authorization for a purchase <u>with a product barcode scanner at the</u>

<u>vendor cash register and transmitting both product barcodes and User ID Barcode to a</u>

<u>vendor server; and</u>

WV0169

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014


    (f)    communicating said User ID Barcode through said vendor server to said

user vendor management server to obtain authorization for a purchase of products

identified by said scanned product barcodes.


    Claim 2 (amended):   The method of Claim 1 including ~~downloading~~ storing said

User ID Barcode ~~into~~ in a cell phone having a window;

    (a)    displaying said User ID Barcode on the cell phone window; and

    (b)    scanning said User ID Barcode displayed in said window to derive said

personal code to obtain authorization for a purchase.


    Claim 3 (original):   The method of Claim 1 including printing said User ID

Barcode on a label or sticker and securing said label or sticker to a carrying member to

facilitate scanning the User ID Barcode.


    Claim 4 (original):   The method of Claim 1 including printing said User ID

Barcode on a label or sticker and securing said label or sticker to a credit card.


    Claim 5 (original):   The method of Claim 1 including printing said User ID

Barcode on a label or sticker and securing said label or sticker to a cell phone.


    Claims 6 - 25 (canceled)

WV0170

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014

## REMARKS

In a typical prior art implementation of a credit card transaction, the credit card company and the credit card transaction processing center are both accessed during a transaction period. The credit card data is entered by swiping the credit card, or as in Wong the barcode is read, and the data travels to a processing center and then to the credit card company. Both destinations must be accessed to approve the transaction. However, the product information is read by a barcode reader and travels from the reader to the vendor's cash register and to the vendor's server while the credit card data, whether in barcode format or not, travels a separate path to the card transaction processing center and to the credit card company. The system of the present invention utilizes a user barcode which travels the same communication path as the information that the barcode reader collects from a product barcode. That is, all communications travel a single route from the barcode scanner to the vendor server. There is no separate communication or separate communication route (such as a credit card reader) accompanying the transaction.

The present invention uses a special character which enables the ordinary retailer's barcode reader to read the User ID, recognize the barcode as a User ID, and communicate with the store server in the conventional manner - - just as it communicates with that server when identifying products being purchased. No communication is

WV0171

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014

undertaken, or required, between the purchaser and any other entity at the time of

purchase. This is a critical feature that provides substantial time savings at point of

purchase - - one of the most important considerations in retail operations efficiency.

The Wong reference uses the typical prior art communication systems; that is,

separate communication paths are required when reading a product barcode and reading a

magnetic credit card strip or a purchaser's barcode. The Wong reference requires the

acquisition of a barcode and transmission of the barcode to the user device; presumably

every time that the user device is being used for a purchase, the communication to

generate a barcode is required. This transmission is obviously through a telephone

network (cell phone). According to Wong, the payment provider then waits for

information from the merchant or scanner - - this information is presumably transmitted

by the merchant's own cell phone device. In either case, the transaction requires the

separate generation of a barcode for that transaction through one network and

communications through a different network between the payment provider and the

merchant or alternatively communication from the merchant through a cell phone

network.

The present invention does not require the generation of a barcode for each

transaction; further, the barcode is scanned by a conventional product barcode reader to

be presented to the standard vendor server that detects the User ID Barcode and

WV0172

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014


communicates through that server to the UVM. No separate network or plural
communication networks are required or used and no cell phone network is used.

It is not believed that Wong's system can use existing scanning systems or even
systems that may be simply modified. Wong's method as described requires that the
vendor install a cell phone or other similar communication device at each and every cash
register to send the barcode it captured directly to the payment processor.

Applicant's system uses a special character - enables existing ordinary retailer's
barcode reader to read the USER ID, recognize it as a user ID, and communicate with the
retail store server in the conventional manner - just as it communicates with that server
when identifying products being purchased. No communication is undertaken, or
required, between the purchaser and any other entity at the time of purchase. This is a
critical feature that provides substantial time savings at point of purchase - one of the
most important considerations in retail operations efficiency

The Bowe reference does not cure the Wong deficiency concerning the special
character incorporated in the User ID barcode. The Bowe reference is directed to the
utilization of the special character to ascertain different aspects of product information.
According to Bowe using a "wildcard" in connection with a barcode can provide primary
barcode information directed to unique product information or a secondary barcode to

WV0173

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014

provide unique asset information.  There is no suggestion anywhere in Bowe to incorporate such "wildcard" within the environment described in the present application. Nothing is suggested in Bowe to provide a wildcard to present to a vendor's product barcode reader an indication of personal identification to distinguish between that identification and the identification of a product being scanned by the same barcode reader and wherein the utilization of the information derived through either scan is directed to the same vendor (retailer) server.

Using a wildcard of Bowe in the system of Wong would accomplish nothing; Wong would still require a second communication path using his cell phone technique.

Ramsdale also fails to correct the deficiencies of Wong.  Regardless of the technique utilized to modify Wong, the end result is a system that presents substantial difficulties for implementation in an existing vendor's (retailer's) point of sale transaction.  A wildcard implementation such as shown in Bowe or the utilization of a sticker such as shown by Ramsdale will still result in a Wong system that is difficult or impossible to implement in a conventional vendor checkout location.  The barcode reader will still require the separate communication to acquire the barcode for the purchaser, and/or the approval of the transaction resulting from the scan of that barcode requires a separate transmission or communication path; none of the references, or the combined references show or suggest the utilization of a single barcode reader (one already

WV0174

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014

available at the typical retailer vendor's checkout or cash register) wherein the information derived by the barcode scan is delivered to the same receiving server (regardless of whether the barcode is an ID or a product code). The present invention uses the existing product barcode reader and communicates to the existing vendor (retailer) server. The implementation of the present invention is readily and easily adapted without additional hardware such as communication devices.

The unexpected advantages of the present invention can be exemplified by an individual purchasing an item in a supermarket wherein the total purchase price of the item is less than $1.00. It will be immediately evident to the clerk and the customer that the requested purchase strains the combined communication channels of the purchasing system such that it will frequently require a significant delay before the purchase is approved. The delay can be several seconds, sometimes as many as 20 or 25 seconds. The delay is the result of the communication channels utilized to approve the purchase and the limitations on the purchased product's value compared to the minimum fee charged by the various levels of the communication channels. Indeed, some credit cards are limited to purchases more than a given amount to assure that the costs of approving the purchase comport with the fees charged by the various levels of the approving structure. The time required for the approval, and the interaction of the communications channels required to issue the approval, militate against the utilization of such prior art systems for micro-purchases. In contrast, using Applicant's system, a low purchase value

WV0175

Appl. No. 13/816,955
Amdt. Dated April 7, 2015
Reply to Office Action of October 17, 2014


or micro-purchase request requires no more time than any other purchase request with the

resultant significant improvement in user satisfaction as well as vendor efficiency.


Respectfully submitted,

CAHILL GLAZER PLC

William C. Cahill
Registration No. 19,742

155 Park One
2141 E. Highland Avenue
Phoenix, Arizona  85016
602/956-7000
602/956-4298-Fax

WV0176