**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| WOLVERINE BARCODE IP, LLC, | ) | Civil Action |
| | ) | |
| Plaintiff, | ) | No. 7:25-cv-00404-DC-DTG |
| | ) | |
| v. | ) | Judge David Counts |
| | ) | Judge Derek T. Gilliland |
| MACY'S, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND................................................................................................... 1

III.  TERMS FOR CONSTRUCTION...................................................................... 3

    A.  "repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode" (Claim 1)........................................................................ 3

    B.  Preamble (Claim 1) .................................................................................... 6

    C.  "label" (Claim 3) ........................................................................................ 9

IV.   CONCLUSION................................................................................................... 10

# TABLE OF AUTHORITIES

## *CASES*

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ............................................................................... 7

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) .............................................................................. 8

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) .............................................................................. 6

*Fenner Invs., Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015) .............................................................................. 5

*Harari v. Lee*,
656 F.3d 1331 (Fed. Cir. 2011) .............................................................................. 4

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
327 F.3d 1364 (Fed. Cir. 2003) .............................................................................. 9

*MEMS Tech. Berhad v. Int'l Trade Comm'n*,
447 F. App'x 142 (Fed. Cir. 2011) ......................................................................... 6

*Novatek, Inc. v. Sollami Co.*,
559 F. App'x 1011 (Fed. Cir. 2014) ....................................................................... 7

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
778 F.3d 1021 (Fed. Cir. 2015) .............................................................................. 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .............................................................................. 5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011) .............................................................................. 5

*Rotatable Techs. LLC v. Motorola Mobility LLC*,
567 F. App'x 941 (Fed. Cir. 2014) ......................................................................... 7

*Salazar v. AT&T Mobility LLC*,
64 F.4th 1311 (Fed. Cir. 2023) .............................................................................. 3

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) .............................................................................. 3

## I.      INTRODUCTION

Defendant, Macy's, Inc. ("Macy's"), submits this brief regarding the construction of the disputed claim terms in U.S. Patent No. 9,280,689 ("the '689 Patent") (Ex. A).  Macy's proposed constructions are consistent with the intrinsic record and the meaning that the disputed claim terms would have to a person of skill in the art ("POSITA") in the context of the patent and prosecution history.  The prosecution history in this case is notable since it is replete with clear and unequivocal statements in which the patentee defined and/or clarified claim terms to distinguish them from prior art.  These definitions and clarifications were accepted by the examiner and led to the issuance of the '689 Patent.  By proposing that no construction is needed for any terms, Plaintiff, Wolverine Barcode IP, LLC ("Wolverine"), hopes to avoid any consequences of these statements in the prosecution history.  Macy's constructions, which account for the intrinsic record, should be adopted.

## II.     BACKGROUND

The '689 Patent is entitled "Method and apparatus for conducting offline commerce transactions."  The specification of the '689 Patent describes a barcode used as an alternative means for personal identification. Ex. A, Abstract.  This "User ID Barcode" is generated from a number that uniquely identifies the user and is prefixed with a special character so that the generated barcode can be distinguished from a barcode representing products being sold.  *Id.*  The User ID Barcode can be downloaded into the user's cell phone and displayed in the cell phone window or printed on a sticker or label secured to a device carried by the user such as a cell phone or credit card.  *Id.*

During prosecution, the patentee further described the "present invention" as follows:

> The present invention uses a special character which enables the
> ordinary retailer's barcode reader to read the User ID, recognize the

1

> barcode as a User ID, and communicate with the store server in the conventional manner - - just as it communicates with that server when identifying products being purchased.  No communication is undertaken, or required, between the purchaser and any other entity at the time of purchase.  This is a critical feature that provides substantial time savings at point of purchase - - one of the most important considerations in retail operations efficiency.

Ex. B (Oct. 17, 2014 Response, pgs. 4-5).

In that same Response, the patentee further explained the "barcode" feature as follows:

> The present invention does not require the generation of a barcode for each transaction; further, the barcode is scanned by a conventional product barcode reader to be presented to the standard vendor server that detects the User ID Barcode and communicates through that server to the UVM [User Vendor Management Server]. No separate network or plural communication networks are required or used and no cell phone network is used.

*Id.*, pgs. 5-6.

Later in prosecution, the patentee further described the claimed invention as being different than prior art in which a one-time payment code was sent to and used by the user at checkout because "Applicant's system is a single channel communication system for all data at all vendor locations/registers using the same single User ID Barcode at all POS [point of sale] locations." Ex. C (Dec. 17, 2015 Amendment), pg. 7.

Through these arguments, and particularly those describing the invention as a "single channel communication system" in which the "same single User ID Barcode" is used for all transactions, the patentee was able to convince the USPTO to withdraw the rejections and issue the '689 Patent.  Indeed, a "Notice of Allowability" issued directly in response to the December 17, 2015 Amendment.  See Ex. D (Notice of Allowability).

## III.    TERMS FOR CONSTRUCTION

The parties have not reached an agreement on the construction for any term from the '689 Patent.  The terms that are in dispute are each addressed below.

### A.    "repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode" (Claim 1)

| Macy's Construction | Wolverine's Construction |
|---|---|
| repeating steps (f) through (i) for subsequent purchase transactions using the same single User ID Barcode for each of the subsequent purchase transactions | No construction needed; plain and ordinary meaning |

Construction of this term is appropriate to account for the repeated instances in the prosecution history where this exact limitation was clarified and even defined.  In particular, during prosecution, the patentee expressly represented that the "said User ID Barcode" used in each of the subsequent transactions *was* the "same single User ID Barcode" and was *not* a single use barcode or one-time code that changed for later transactions.  Macy's construction is correct in view of both the language of the claim itself and the intrinsic record, while Wolverine's "no construction" position leaves the dispute unresolved.

First, with regard to the claim language, the claim uses the article "said" in the phrase "said User ID Barcode" of step (i).  This use of "said" means that the User ID Barcode referenced in step (i) is the same User ID Barcode referenced earlier in the claim (i.e., in step (f) to "conduct[ ] purchases at vendors").  *See Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1315 (Fed. Cir. 2023) ("We have also explained that '[t]he use of the term 'said' indicates that this portion of the claim limitation is a reference back to the previously claimed' term.") (quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015)).  In other words, the natural reading of the claim is that the User ID Barcode of step (i) which is used for "subsequent purchase transactions" is the same User ID Barcode that is first introduced earlier in the claim in step (f)

where it is used to "conduct[ ] purchases." *See Harari v. Lee*, 656 F.3d 1331, 1342 (Fed. Cir. 2011) (concluding that "the correct and only reasonable construction of the claim terms 'a bit line' and 'said bit line' . . . requires that a single bit line activates multiple memory cells").

Second, to the extent there is any doubt about this meaning, the prosecution history discussed above confirms that the same barcode must be used for each transaction referenced in the claim. For example, when faced with a rejection over the Wong reference (United States Patent Application Publication No. 2010/0138344) (Ex. E), the patentee argued the claimed invention was different because "[t]he present invention does not require the generation of a barcode for each transaction." *See* Ex. B, pg. 5. Notably, Wong describes a system in which a single-use barcode is generated. *See* Ex. E, Abstract ("An application on user's mobile device (having a display screen) generates a one-time use and time-limited barcode on the display when the user enters a PIN. The barcode can be scanned to make purchases at a point of sale (POS).").

In response to this argument distinguishing the Wong reference, the Examiner withdrew the rejection based on Wong and replaced it with a rejection based on Chloe (United States Patent Application Publication No. 2008/0103984) in view of Wong. Ex. F (Sep. 9, 2015 Office Action), pg. 3. In response to this rejection, the patentee argued that his system was different than both Chloe and Wong because it "is a single channel communication system for all data at all vendor locations/registers ***using the same single User ID Barcode*** at all POS locations." Ex. C, pg. 7 (emphasis added). The patentee continued this line of argument by again confirming that the "the User ID Barcode is assigned to and stored by the User (e.g. in cell phone, on credit card, on label . . . etc.) for subsequent purchases ***and is used for each purchase and all subsequent purchases***. . . . ***Each purchase transaction is accomplished by using the same User ID Barcode***." *Id.*, pg. 8 (emphasis added).

4

The prosecution history, like the specification, provides evidence of how the USPTO and the inventor understood the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). As the Federal Circuit has explained, "[a]ny explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)).

In this instance, the patentee explained that the claimed method requires the "same single User ID Barcode" to be used not just for the first claimed transactions, but for "all subsequent transactions." Macy's proposed construction adopts this concept. In addition, the patentee further explained what the claimed method is ***not***. In particular, the patentee explained that "[t]he present invention does not require the generation of a barcode for each transaction," like in the cited Wong reference in which a new barcode was generated for each transaction. *See* Ex. B, pg. 5; Ex. E, Abstract. Macy's proposed construction conforms to this additional point as well. This explanation, provided during prosecution, represents an "explanation, elaboration, or qualification" that informs the meaning of the term. *Fenner*, 778 F.3d at 1323. Thus, the Court should accept Macy's proposed construction, which adopts the patentee's explanation of the term verbatim. *Id*. at 1325 (construing term based on an explanation of the invention made to distinguish prior art during prosecution).

Macy's proposed construction also naturally aligns with the specification. For example, one stated benefit of the alleged invention is that it can be used for an "offline" transaction. Ex. A, Title. An "offline" transaction would not receive new barcodes for each use but would instead reuse an existing barcode that was already on the device or otherwise known to the user. In

addition, the specification describes preferred embodiments in which the User ID Barcode is printed in the form of a label and physically attached to a credit card. Ex. A, 2:41-46; 5:45-49; 6:8-13. A printed representation of the User ID Barcode would not, as a practical matter, change for each transaction as this would require the user to reprint and reattach the label after each use. Instead, the only natural reading consistent with the specification is that the same User ID Barcode (e.g., the one printed and attached to the user's credit card) is used for each subsequent transaction.

Wolverine has proposed that no construction of this term is necessary. However, it would be improper to not construe this term at all since that would effectively ignore the intrinsic record created to obtain the '689 Patent in the first place. As noted above, the prosecution history represents a clear and unequivocal effort by the patentee to specify that the same "User ID Barcode" is used across multiple transactions. In order to understand this term in view of the intrinsic record, it is necessary to give due weight and effect to these statements in the prosecution history through the claim construction process. Accordingly, the Court should adopt Macy's construction.

### B.    Preamble (Claim 1)

| Macy's Construction | Wolverine's Construction |
| --- | --- |
| The preamble is limiting | No construction needed |

Macy's contends that the preamble of Claim 1 is limiting. Wolverine appears to disagree.

In general, a preamble is limiting if it is "necessary to give life, meaning, and vitality to the claims." *MEMS Tech. Berhad v. Int'l Trade Comm'n*, 447 F. App'x 142, 149 (Fed. Cir. 2011). "[W]hen the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope" (citation and internal quotations omitted). *Id*. at 154; *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (preamble limiting as "necessary to understand the subject matter encompassed by the claim . . ..."). This can come about in various

ways.  For example, when "limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015).  And, "clear reliance on the preamble during prosecution to distinguish the claimed invention from prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Novatek, Inc. v. Sollami Co.*, 559 F. App'x 1011, 1015 (Fed. Cir. 2014) (citation and internal quotations omitted); *see also Rotatable Techs. LLC v. Motorola Mobility LLC*, 567 F. App'x 941, 943 (Fed. Cir. 2014).

The preamble of Claim 1 meets these criteria and is plainly limiting.  For one, the body of Claim 1 relies upon the preamble for antecedent basis for a limitation that appears in the claim. The preamble, which reads "[a] method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising," provides antecedent basis for the claim terms "vendor cash register," which appears for the first time in the preamble and is then subsequently used, in step (f), with the definite article "the" in the phrase "the vendor cash register."  Accordingly, the preamble is limiting because it is necessary to understand what "vendor cash register" is being referenced in the body of the claim.  *See Pacing Techs.*, 778 F.3d at 1024; *see also Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("if the claim drafter 'chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects'") (citation omitted).

During prosecution, the patentee expressly acknowledged the importance of the preamble by amending the preamble to specify that the method used a vendor barcode scanner at a vendor cash register.  Specifically, on April 7, 2015, the patentee added the concept of the "vendor cash

7

register" through the below amendment to Claim 1, which included an amendment to the preamble as well as the body of the claim:

> Claim 1 (amended):    A method for conducting offline electronic commerce transactions <u>using a vendor barcode scanner at a vendor cash register</u> comprising:
>
> (a)    providing a personal code to a person for their use to purchase goods;
>
> (b)    converting said personal code into barcode format to form a User ID Barcode;
>
> <u>(c)    storing said personal code in a user vendor management server;</u>
>
> (c) <u>(d)</u> said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode <u>from a product barcode</u>; and
>
> (d) <u>(e)</u> scanning <u>product barcodes and</u> said User ID Barcode to derive said personal code to obtain authorization for a purchase <u>with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to a vendor server; and</u>

Ex. B, pg. 2

Because the patentee expressly added "vendor cash register" to the preamble by amendment in order to provide antecedent basis, there was clear reliance on the preamble such that the patent owner cannot now disavow it in litigation. *See Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1370-72 (Fed. Cir. 2020) (error to construe preamble as non-limiting where the preamble was amended during prosecution to add limitations that provided antecedent basis for claim limitations appearing later in the claim); s*ee also Invitrogen Corp. v. Biocrest Mfg., L.P.*,

327 F.3d 1364, 1370 (Fed. Cir. 2003) (ruling that term "improved competence" in preamble was a claim limitation because the applicant expressly added the term to the claim by amendment).

### C. "label" (Claim 3)

| Macy's Construction | Wolverine's Construction |
|---|---|
| a printed, physical label (i.e., not a digital representation). | No construction needed; plain and ordinary meaning |

This term appears in Claim 3, which reads as follows:

3. The method of claim 1 wherein said User ID Barcode is stored by said person on a label secured to a credit card or secured to a user's cell phone.

Ex. A, 18:34-36.

Construction of this term is needed in view of Wolverine's apparent position that a "label" can be an electronic representation that is not affixed to anything. Wolverine's position is at odds with the specification, other claims, and common meaning. Accordingly, Macy's construction should be adopted.

First, the most natural reading of a label that is secured "*to* a credit card" or "*to* a user's cell phone" is that this label is a physical object, not a digital representation. Indeed, a physical object can be secured "to" another object, such as a credit card or cell phone, while a digital representation cannot.

Second, Claim 3 immediately follows Claim 2 which states an alternative embodiment in which "said User ID Barcode is stored by said person in a cell phone." Ex. A, 18:32-33. In Claim 2, there is no "label" and the User ID Barcode is stored "in" a cell phone, not attached "to" the cell phone. The natural conclusion regarding Claim 3, when considered together with Claim 2, is that Claim 2 is directed to the barcode in digital form while Claim 3 is directed to the alternative embodiment of the barcode in physical form.

9

Third, the specification makes this same distinction between data stored "in," or "downloaded into," a cell phone (as in Claim 2) and a physical label secured "to" a cell phone or credit card, as in Claim 3:

> The User ID Barcode can be generated from the cell phone number and downloaded into a cell phone or generated from the credit card number and printed on the back of the regular credit card, or on labels secured to the credit card, as examples.

Ex. A, 5:45-49.

> To make the capturing of the cell phone number easier, it is desirable, for example, that the User ID Barcode is downloaded to the user's cell phone and displayed at the cell phone window or on a label secured to the cell phone.

*Id*,, 6:5-8.

In view of the above, the most natural reading of the "label" term in Claim 3 is that this refers to a printed, physical label, not a digital representation of the User ID Barcode.

## IV.    CONCLUSION

Based on the foregoing, Macy's asks the Court to adopt its claim construction positions as outlined above.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: May 6, 2026

s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr.
Bryan P. Clark
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com
*Attorneys for Defendant*

10

No. 7:25-cv-00404-DC-DTG

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2026, I electronically filed the foregoing **DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF** with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

**THE WEBB LAW FIRM**

s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr.